## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| TRACY R. ANDERSON, MAURICIO GUERRERO, SAGELINE LAURENT, REBECCA MORALES, and JEFFREY S. THOMAS,<br><br>　　　Plaintiffs,<br><br>v.<br><br>ALEJANDRO MAYORKAS, Secretary, U.S. Dep't of Homeland Security, in his official capacity,<br><br>　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)　Case No: 8:22-cv-2941-VMC-CPT<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### PLAINTIFFS' TRIAL BRIEF

Plaintiffs file this trial brief to explain why the Court should adopt Plaintiffs'

positions in the parties' disputes over jury instructions and Plaintiffs' exhibits.

**I.　Defendant's Proposed Jury Instructions on the Discrimination Claim, the Bona Fide Occupational Qualification Defense, and Damages Misstate the Law and Would Mislead the Jury.**

Plaintiffs understand from the Court's comments at the pretrial conference

that the Court intends to decide the jury instruction issues at a later date and may not

need briefing on those issues. But because the disputed jury instructions set forth the

core legal standards that will govern the trial, Plaintiffs believe that the stakes are

high enough to justify laying out their objections to Defendant's proposed jury

instructions in writing, with citations to authority. So, Plaintiffs explain below why

1

Defendant's proposed instructions on the discrimination claim, the bona fide

occupational qualification (BFOQ) defense, and damages would impose legal

standards in this case that are contrary to law.

> **A.      Defendant's Proposed Instruction 4.5 Title VII – Civil Rights Act – Discrimination Conflicts with the Federal-Sector Provision of Title VII and Misconstrues the Supreme Court's Decision in *Babb v. Wilkie*, 589 U.S. 399 (2020).**

Defendant's proposed instruction on the discrimination claim states that

Plaintiffs must prove two elements, the second of which contains two alternatives:

> <u>First</u>:      Defendant denied Plaintiffs their preferred bid units bid units including work hours and schedules; and

> <u>Second</u>:  Plaintiffs' sex was a but-for cause in Defendant's decision to deny Plaintiffs their preferred bid units including work hours and schedules

> OR

> that Plaintiffs' sex was a but-for cause of differential treatment in the process of assigning bid units including work hours and schedules, even if it was not a but-for cause in Defendant's decision to deny Plaintiffs their preferred bid units including work hours and schedules.

Both elements misstate the law: the first conflicts with the federal-sector

provision of Title VII, while the second conflicts with *Babb*.

> **1.      The First Element's Focus on "Defendant's Decision to Deny Plaintiffs Their Preferred Bid Units" Conflicts With the Federal-Sector Provision of Title VII.**

**a.**  Contrary to Defendant's framing of the first element, the federal-sector

provision of Title VII, 42 U.S.C. § 2000e-16(a), places no significance on Plaintiffs'

*preferred* work assignments. It merely requires Plaintiffs to prove that Defendant

made a "personnel action[] affecting" them. 42 U.S.C. § 2000e-16(a). According to

the Supreme Court, the meaning of "personnel action" derives from 5 U.S.C.

§ 2302(a)(2)(A) and "broadly . . . include[s] most employment-related decisions, such

as [a] work assignment." *Babb*, 589 U.S. at 405. So, under the statute, Plaintiffs need

only prove that Defendant made work assignments affecting them. Plaintiffs can

satisfy this requirement whether or not they were denied their *preferred* work

assignments.

The cases of the female Plaintiffs demonstrate the impact of framing the

inquiry around Plaintiffs' preferences. The female Plaintiffs ranked among the least

senior CBPOs. Because management makes work assignments in seniority order,

even without the consideration of gender, at least two of the female Plaintiffs

(Anderson and Morales) would not have received their preferred assignments. In

other words, focusing the inquiry on the decision to deny Plaintiffs their *preferred*

assignments sets these two Plaintiffs up for failure. Under Defendant's policy of

forcing low-seniority women into the female-only assignments, however, gender was

the but-for cause of their assignments—if they were male, they would have been

assigned to different shifts, schedules, and work units. That is more than enough to

succeed on a disparate treatment claim under the language of statute.

**b.** Perhaps Defendant framed the instruction around a denial of Plaintiffs'

preferred assignments to incorporate some requirement that Plaintiffs were harmed

by their assignments—in other words, that their assignments were less favorable than

3

they would have been if gender played no role. If so, requiring a denial of Plaintiffs'
preferred assignments would still be wrong for two reasons.

First, whether Plaintiffs are required to show any harm beyond the fact of
differential treatment is an open question. In *Muldrow v. City of St. Louis*, 144 S. Ct.
967, 972 (2024), the Supreme Court recently interpreted the "discriminate against"
language in the provision of Title VII that applies to non-federal employees as
requiring plaintiffs to prove "some harm" from the challenged employment action,
but overruled any requirement of "significant" or "tangible" harm. This holding,
however, does not necessarily apply to the federal-sector provision of Title VII.
Although the federal-sector provision uses the term "discrimination," it does not use
the phrase "discriminate against." *See* 42 U.S.C. § 2000e-16(a). As *Babb* teaches,
when Congress decides to use different language in the federal-sector provision than
in the private-sector provision, courts "generally ascribe significance to such a
decision." 589 U.S. at 412. And while the phrase "discriminate against" connotes
differential treatment that causes injury, the unadorned term "discrimination" just
connotes differential treatment. *Compare Muldrow*, 144 S. Ct. at 974 ("The words
'discriminate against' . . . refer to 'differences in treatment that injure' employees"
(quoting *Bostock v. Clayton Cnty.*, 590 U.S. 644, 681 (2020)), *with Babb*, 589 U.S. at
405 ("And as for 'discrimination,' we assume that it carries its 'normal definition,'
which is 'differential treatment.'" (quoting *Jackson v. Birmingham Bd. of Ed.*, 544 U.S.
167, 174 (2005)).

Second, even if Plaintiffs are required to show that they received less favorable assignments than they otherwise would have, they are not required to show that they otherwise would have received their *preferred* assignments. The assignments that Plaintiffs were given under Defendant's gender-based policy could have been—and, in fact, were—less favorable than the assignments they would have received if gender played no role. As the evidence at trial will show, Anderson and Morales, for example, could have received assignments on the day shift if gender were not a factor, even if they would not have received any of the assignments that they preferenced on their bid sheets.

### 2. Defendant's Formulation of the Causation Standard in the Second Element Conflicts With *Babb*.

The whole upshot of the Supreme Court's decision in *Babb* is that federal employees need not show that a protected characteristic (there, age) was the but-for cause of the challenged employment action. *Babb*, 589 U.S. at 402, 406-407. Instead, the causal link between the protected characteristic and the personnel action that applies after *Babb* is that Plaintiffs must show that the characteristic (here, gender) "played any part" in the action. *Id.* at 406. This "played any part" standard, however, appears nowhere in Defendant's proposed instruction. In fact, the second element of Defendant's proposed instruction includes the very standard that the *Babb* Court rejected: the first alternative is for Plaintiffs to prove that "sex was a but-for cause in Defendant's decision to deny Plaintiffs their preferred bid units including work hours and schedules."

Although the second alternative that Defendant proposes draws some support from *Babb*, it lacks the applicable "played any part" standard and likely will mislead the jury. The Court in *Babb* explained that while the protected characteristic need not be the but-for cause of the personnel action, the protected characteristic must be, as the second alternative in Defendant's proposed instruction recites, "the but-for cause of *differential treatment*." *Id.* at 407. The Court made this distinction, however, only to reject the government's argument that the "based on" language in the statutory phrase "discrimination based on age" requires but-for causation between the protected characteristic and the personnel action. *Id.* at 407-08. The Court was not creating some new, alternative requirement for but-for causation other than the straightforward requirement for "discrimination based on" a protected characteristic. By including the standard that "sex was a but-for cause of differential treatment" in the same element that also attempts to describe the level of causation required between the protected characteristic and the personnel action, the second alternative in Defendant's proposed instruction may mislead the jury to conclude precisely what *Babb* rejected: that the protected characteristic must be the but-for cause of the personnel action.

The consequences of this misleading instruction could be dire. No reasonable jury could find an absence of "discrimination based on" gender here. Indeed, both the Court and the Defendant acknowledged at the summary judgment stage that Defendant engaged in facial gender discrimination. *See* Order, Doc. #81, at 23; Def.'s Mot. for Summ. J., Doc. #74, at 2. And especially after seeing the evidence at

trial, no reasonable jury could conclude that Defendant's facially discriminatory policy did not "play any part" in Plaintiffs' work assignments either. The but-for causation standards in the second element of Defendant's instruction, however, could cause the jury to reach an unreasonable, reversible verdict.

### 3. Unlike Defendant's, Plaintiffs' Proposed Instruction on the Disparate Treatment Claim Tracks the Statute and Case Law.

To summarize the requirements of the federal-sector provision of Title VII and *Babb*, federal employee plaintiffs must prove three elements to succeed on a disparate treatment claim. First, plaintiffs must show that the defendant agency made "personnel actions affecting" them. 42 U.S.C. § 2000e-16(a); *Babb*, 589 U.S. at 405. Second, plaintiffs must show discrimination—that is, differential treatment—based on a protected characteristic. 42 U.S.C. § 2000e-16(a); *Babb*, 589 U.S. at 405. Third, they must show that the discrimination "play[ed] any part in" the way the personnel action was made. *Babb*, 589 U.S. at 406. The elements set forth in Plaintiffs' proposed jury instruction track those legal requirements:

> To succeed on this claim, Plaintiffs must prove each of the following by a preponderance of the evidence:
>
> First:      Defendant made personnel actions affecting Plaintiffs.
>
> Second:   Defendant treated employees differently because of their gender;
>
> Third:     Defendant's gender distinctions played a role in the personnel actions affecting Plaintiffs.

7

In addition, Plaintiffs designed their proposed instruction so that non-lawyers in the jury could understand it. For example, although "personnel actions" in the first element is a statutory term of art, the instruction later explains that "personnel actions include most employment-related decisions, such as a work assignment or any significant change in duties, responsibilities, or working conditions." This explanation summarizes the definition of "personnel action" outlined in *Babb*, 5899 U.S. at 405.

Plaintiffs also crafted the second element with non-lawyer jurors in mind. The Court in *Babb* deduced from the straightforward phrase "discrimination based on age" that discrimination means "differential treatment" and that "in common talk, the phrase 'based on' indicates a but-for causal relationship." *Id.* Plaintiffs opted not to use such legalese in their proposed jury instruction. Instead of using the term "differential treatment," Plaintiffs used the more legible phrase "treated differently." And instead of using the term "but-for cause," Plaintiffs used the more familiar phrase "because of," which conveys the same concept. *See id.* at 410 (describing "because of" as "but-for" language).

### B. Defendant's Proposed Instruction on the BFOQ Defense Leaves Out Required Elements and Obfuscates the Facially Discriminatory Policy at Issue.

Defendant's proposed instruction on the BFOQ defense states that Defendant must prove two elements:

(a) That gender is a qualification reasonably necessary to the normal operation of Defendant's business with regard to performing personal searches

AND

(b) That the essence of Defendant's business operation would be undermined by not scheduling Customs and Border Protection Officers of both sexes to perform personal searches as needed during the evening at the Tampa International Airport.

This instruction misstates the law because it leaves out required elements. It also likely will mislead the jury because the second element frames the facially discriminatory female-only assignments at issue in gender-neutral terms.

## 1. Defendant's Proposed Instruction Omits Required Elements of the BFOQ Defense.

The Eleventh Circuit has issued two decisions on the BFOQ defense in the context of gender discrimination: *Garrett v. Okaloosa County*, 734 F.2d 621 (11th Cir. 1984), and *Hardin v. Stynchcomb*, 691 F.2d 1364 (11th Cir. 1982). Defendant bases its proposed BFOQ instruction on *Garrett*, and Plaintiffs base theirs on *Hardin*.

*Hardin* is the better model for framing the BFOQ standard. It fleshes out that standard in much more detail. For instance, *Hardin* quotes an element to the BFOQ defense not listed in *Garrett* or in Defendant's proposed BFOQ instruction that comes from binding Fifth Circuit in precedent in *Weeks v. Southern Bell Tel. & Tel. Co.*, 408 F.2d 228, 235 (5th Cir. 1969): "[A]n employer has the burden of proving that he had

9

reasonable cause to believe, that is, a factual basis for believing, that all or substantially all [employees of one sex] would be unable to perform safely and efficiently the duties of the job involved." *See Bonner v. City of Prichard*, 661 F.3d 1206, 1209 (11th Cir. 1981) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

*Hardin* also adopts a standard from the Eighth Circuit in *Gunther v. Iowa State Men's Reformatory*, 612 F.2d 1079, 1086 (8th Cir.), *cert. denied*, 446 U.S. 966 (1980), requiring defendants to "prov[e] that because of the nature of the operation of the business they could not rearrange job responsibilities in a way that would eliminate the clash between the privacy interests of the inmates and the employment opportunities of female deputy sheriffs." Contrary to Defendant's note that the Eleventh Circuit has not, like other circuits, required defendants to prove reasonable alternatives, this standard about alternative ways of arranging job responsibilities incorporates a very similar concept. Indeed, the Court denied summary judgment here because of the parties' genuine disputes about the reasonableness and viability of certain alternatives to designating female-only assignments. *See* Order, Doc. #81, at 30-32.

Finally, although *Garrett* is two years more recent than *Hardin*, it does not supersede the earlier decision. One Eleventh Circuit panel cannot overrule a prior one. *United States v. Steele,* 147 F.3d 1316 (11th Cir. 1998) (en banc). Thus, while *Hardin* sets forth the full, fleshed-out standard for a gender-based BFOQ, *Garrett* includes an incomplete, abbreviated one.

10

## 2. The Second Element of Defendant's Proposed BFOQ Instruction Obscures the Facially Discriminatory Policy at Issue.

The second element of Defendant's Proposed BFOQ instruction suggests that the policy that Plaintiffs challenge in this case is a gender-neutral practice of "scheduling Customs and Border Protection Officers of both sexes to perform personal searches as needed during the evening at the Tampa International Airport." It is not. Rather, Plaintiffs challenge Defendant's alteration of what is supposed to be a gender-neutral, seniority-based system of distributing work assignments by designating certain assignments on the night shift as female-only. As Defendant has acknowledged, "designating female-only slots is facially discriminatory." Def.'s Mot. for Summ. J., Doc. #74, at 2.

In the Amended Case Management and Scheduling Order, Doc. #46, at 8, the Court warned that it "will deny outright a proposed instruction that is 'slanted' in any way." Defendant's framing of CBP's facially discriminatory policy as a gender-neutral one in its proposed BFOQ instruction is slanted. Thus, it must be rejected.

## C. Defendant's Proposed Instruction on Damages Reflects Defendant's Misunderstanding of *Babb* and Misapplies the Concept of Mitigation.

Both sides' proposed instructions on damages follow the Eleventh Circuit's pattern instruction 4.5 almost verbatim, with some adjustments. Plaintiffs added language required by *Babb*. Defendant failed to include that language. Instead, Defendant included an instruction on mitigation that deviates from the Eleventh Circuit's standard and, in any event, does not apply to this case.

11

1.   **Defendant's Proposed Instruction Lacks the But-For Causation Standard for Damages Required in *Babb*.**

In *Babb*, the Supreme Court held that federal employees need not show that a protected characteristic was the but-for cause of the personnel action to prove liability. *Babb*, 589 U.S. at 402. But as the Court also explained, "[t]his does not mean that a plaintiff may obtain . . . compensatory damages[] without showing that personnel action would have been different if [the protected characteristic] had not been taken into account." *Id.* "To obtain such relief," the Court continued, "a plaintiff must show that age was a but-for cause of the challenged employment decision." *Id.*

Thus, Plaintiffs included the following language in their proposed instruction on damages:

> To award compensatory damages to a Plaintiff, you must find that the personnel action affecting him/her would have been different if gender had not been taken into account.

Defendant's proposed instruction on damages, by contrast, fails to incorporate this concept from *Babb*. Defendant likely omitted the but-for causation standard from its damages instruction because, contrary to *Babb*, Defendant included that standard in the second element of its instruction on the discrimination claim—at least in the first alternative listed in that element:

> <u>Second</u>:  Plaintiffs' sex was a but-for cause in Defendant's decision to deny Plaintiffs their preferred bid units including work hours and schedules

12

OR

> that Plaintiffs' sex was a but-for cause of differential treatment in the process of assigning bid units including work hours and schedules, even if it was not a but-for cause in Defendant's decision to deny Plaintiffs their preferred bid units including work hours and schedules.

But if Plaintiffs only prove the second alternative—that the protected characteristic was the but-for cause of differential treatment—they would not have proved the requirement for damages—that the protected characteristic was the but-for cause of the personnel action. So, in addition to being inaccurate and confusing, the second element in Defendant's instruction on the discrimination claim does not make up for the lack of but-for cause language in Defendant's instruction on damages.

## 2.  Defendant's Inclusion of a Mitigation Instruction Is Contrary to Law.

The "Mitigation of Damages" part of the Eleventh Circuit's pattern jury instruction 4.5 only applies to cases in which a plaintiff was terminated from his or her employment. In those cases, as the pattern instruction states, "the duty to mitigate damages requires [name of plaintiff] to be reasonably diligent in seeking substantially equivalent employment to the position [he] [she] held with [name of Defendant]." The pattern instruction mirrors Eleventh Circuit case law on mitigation of damages in Title VII cases, which also focus solely on terminated employees' duty to seek other, equivalent employment. *See, e.g.*, *Hicks v. City of Tuscaloosa*, 870 F.3d 1253, 1261 (11th Cir. 2017); *Weatherly v. Ala. State Univ.*, 728 F.3d 1263, 1272 (11th Cir. 2013).

Here, however, neither the pattern instruction nor the Eleventh Circuit's Title VII mitigation cases apply. Plaintiffs did not lose their jobs. Instead, they received discriminatory work assignments. So, they had no duty to seek other employment.

Because the pattern instruction does not apply, Defendant modifies it to state that "the duty to mitigate damages requires Plaintiffs to be reasonably diligent in seeking additional hours to supplement any lost income or limiting expenses accrued based on not receiving their preferred bid units including work hours and schedules for FY2018." But Defendant cites no authority—and Plaintiffs can find none—suggesting that Plaintiffs who already have full-time jobs must go above and beyond to seek overtime assignments to mitigate their damages. Indeed, one category of damages that Plaintiffs seek is childcare expenses incurred as a result of their discriminatory work assignments. If they had sought "additional hours," as Defendant suggests they should have, they likely would have been away from home more and likely would have incurred even more in childcare expenses.

In addition, instructing the jury to consider any supplemental pay that Plaintiffs could have sought is improper when the jury is not tasked with awarding the equitable remedy of backpay. "The statutory duty to minimize damages" under Title VII derives from 42 U.S.C. § 2000e-5(g), which "states that '[interim] earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.'" *Ford Motor Co. v. EEOC*, 458 U.S. 219, 231, n.14 (1982). So, even if Plaintiffs had some duty to "seek[] additional hours" or otherwise earn supplemental income, that

14

income should only be subtracted from any backpay awarded by the Court, not from any compensatory damages awarded by the jury.

## II.    Plaintiffs' Exhibits Should Be Admitted Over Defendant's Objections.

To save the time that a back-and-forth on the disputed exhibits will take at trial, Plaintiffs respond here to the objections that Defendant noted on Plaintiffs' Exhibit List.

### A.    The Chart in Plaintiffs' Exhibit 6 Is Relevant and Admissible Under Federal Rule of Evidence 1006.

Plaintiffs' Exhibit 6 is a chart showing where each CBP Officer who participated in the fiscal year (FY) 2018 Bid, Rotation, and Placement (BRP) process would have been placed if no assignments were designated female-only. It should be admitted over each of Defendant's objections, as explained below. If the Court agrees with any of Defendant's objections, however, Plaintiffs ask the Court to allow them to present the chart as a demonstrative exhibit.

**1.**    **FRE 401/402 Relevance.** Under Federal Rule of Evidence (FRE) 401, "[e]vidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Exhibit 6 is relevant evidence, and thus, it is admissible under FRE 402.

Exhibit 6 shows that if Defendant had not considered gender in making work assignments, Plaintiffs would have received assignments that were different and more favorable. This fact is of consequence in determining the action because to

succeed on their disparate treatment claim, Plaintiffs must show that gender played a part in Defendant's assignment decisions affecting them. *See supra* at 5 (citing *Babb*, 589 U.S. at 406). Exhibit 6 also shows that gender was a but-for cause of Plaintiffs' assignments, as required for Plaintiffs to receive compensatory damages. *See supra* at 12 (citing *Babb*, 589 U.S. at 402).

Defendant has argued previously that "[i]f the female slots had not been designated, it is unknown how all 63 [CBP Officers] would have preferenced their work units and shifts in FY2018." Def.'s Mot. for Summ. J., Doc. #77, at 3. As the evidence at trial will show, however, when management at the Port of Tampa reduced the number of female-only slots from six to three, they did not ask CBP Officers to submit new bids. Rather, they assumed that CBP Officers' preferences remained the same. *See* Pls.' Mot. for Partial Summ. J. Ex. 9, Doc. #52-10, at DEF. RFP RESP. 1341-1432 (containing the FY2018 bid sheets, on which six assignments are designated female-only); Def.'s Mot. for Summ. J. Ex. 18, Doc. #51-2, at 000117 (containing BRP meeting notes indicating that female-only assignments were reduced from six to three before the placement process was conducted). Just as management ran the BRP process using the same bid sheets after reducing the number of female-only slots from six to three, Daniel Nieto can testify how the chart in Plaintiffs' Exhibit 6 reflects what would have happened if the BRP process were run using the same bid sheets if the number of female-only slots were reduced to zero.

16

    **2.**    <u>**FRE 701 Opinion Testimony by a Lay Witness.**</u> FRE 701 requires as follows:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Exhibit 6 is admissible over Defendant's FRE 701 objection because Daniel Nieto, a member of the fiscal year (FY) 2018 Bid, Rotation, and Placement (BRP) committee and the witness who will testify about Exhibit 6, will not offer opinion testimony. Exhibit 6 shows which assignments CBP Officers at the Port of Tampa would have received in FY2018 based solely on their seniority and the preferences that they marked on their bid sheets. In other words, it is fact, not opinion. If, however, the Court disagrees that Exhibit 6 reflects facts and not opinions, Plaintiffs will tender Mr. Nieto as an expert in the BRP process, pursuant to FRE 702.

    **3.**    <u>**FRE 802–804 Hearsay.**</u> The hearsay rules do not bar admission of Plaintiffs' Exhibit 6. Plaintiffs offer Exhibit 6 under FRE 1006 as a "chart . . . to prove the content of voluminous writings . . . that cannot be conveniently examined in court." The chart in Exhibit 6 summarizes the ninety-three pages of bid sheets submitted by the sixty-three CBP Officers who participated in the FY2018 BRP, which themselves comprise Plaintiffs' Exhibit 4. Marching through all of those bid

sheets to demonstrate how the BRP process would have unfolded without female-only slots would be far less convenient than presenting the same information in a single chart.

Of course, "Rule 1006 is not a back-door vehicle for the introduction of evidence which is otherwise inadmissible." *PEAT, Inc. v. Vanguard Research, Inc.*, 378 F.3d 1154, 1160 (11th Cir. 2004). An opposing party could, for example, object to the admissibility of a summary chart under FRE 1006 if the underlying documents that are summarized constitute inadmissible hearsay. *See Curtis v. Perkins*, 781 F.3d 1262, 1266 (11th Cir. 2015). Here, however, Defendant has not argued that the underlying documents are hearsay. Rather, Defendant stipulated to the admissibility of the underlying documents in Plaintiffs' Exhibit 4 that Plaintiffs' Exhibit 6 summarizes. Thus, Defendant cannot now object to the admission of Plaintiffs' Exhibit 6 under FRE 1006.

**4.** **FRE 901 Authentication.** The Eleventh Circuit has not opined on whether a Rule 1006 summary chart requires an authenticating witness. Weinstein's Federal Evidence notes that "Rule 1006 does not expressly require that charts, summaries, or calculations be authenticated on the witness stand, for example, by the person responsible for their preparation." 6 Jack b. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 1006.05[4] (Mark S. Brodin ed., Matthew Bender 2d ed. 1997). Accordingly, the Fifth Circuit has held that Rule 1006 "does not require an authenticating witness." *Right of Way Maint. Co. v. Gyro-Trac, Inc.*, 303 Fed. App'x 229, 230 (5th Cir. 2008). Other circuits take a different view. *See Colón-*

*Fontánez v. Municipality of San Juan*, 660 F.3d 17, 31 (1st Cir. 2011) (quoting *United States v. Bray*, 139 F.3d 1104, 1110 (6th Cir. 1998)).

FRE 901 provides that authenticating evidence requires the proponent to "produce evidence sufficient to support a finding that the item is what the proponent claims it is." FRE 901(a). Evidence that satisfies this requirement includes testimony by a witness with knowledge that an item is what it is claimed to be. FRE 901(b)(1). Although a National Treasury Employees Union staff attorney prepared the chart in Plaintiffs' Exhibit 6 under the supervision of Plaintiffs' counsel, Daniel Nieto has personal knowledge of the underlying bid sheets and the FY2018 BRP process. He is competent to testify that the chart accurately depicts what the results of the FY2018 BFP process would have been if the process were based solely on the participating CBP Officers' seniority and bid preferences, without female-only slots.

**5.    FRCP 26 Duty to Disclose.** As noted above, Plaintiffs' Exhibit 6 is a summary chart under FRE 1006. Summaries need not be disclosed during the discovery process. *See Colón-Fontánez*, 660 F.3d at 30. "Rule 1006 provides that only the underlying documents, not the summaries themselves, must be produced to the opposing party" for examination or copying *Id.* (citing FRE 1006).

Here, the underlying documents—the FY2018 bid sheets—were in the possession of Defendant and were provided to Plaintiffs in Defendant's initial disclosures. When, as here, the underlying "material is in the possession of the party opposing the summary evidence, obviously the material already is available for that party's examination and copying." Victor James Gold, 31 Federal Practice and

Procedure, § 8045 (2d ed.) (citing *Concorde Limousines v. Moloney Coachbuilders*, 835 F.2d 541, 545 (5th Cir. 1987)). So, Plaintiffs have not violated any duty to disclose under Federal Rule of Civil Procedure 26.

### B. The Declaration in Plaintiffs' Exhibit 12 Should Be Admitted If the Declarant Is Not Available to Testify.

Plaintiffs' Exhibit 12 is the Declaration of Alyssa Morris, the CBP Port Director for the Port of Fresno. Defendant objects to this exhibit under the hearsay rules in FRE 801, 803, and 804. Plaintiffs concede that the declaration is hearsay and will only use it if Ms. Morris is not available to testify.

### C. The Records of Childcare Expenses in Plaintiffs' Exhibit 13 Are Admissible Business Records and Were Adequately Disclosed in Discovery.

Plaintiffs' Exhibit 13 contains Dependent Care Flexible Spending Account (FSA) statements from 2018 from Plaintiff Rebecca Morales and her spouse. The exhibit supports Morales's request for compensation for childcare expenses incurred because of her assignment to a female-only slot on the night shift. Plaintiffs' Exhibit 13 should be admitted over Defendant's objections.

#### 1. FRE 802–804 Hearsay.

The FSA account statements in Plaintiffs' Exhibit 13 are not excluded by the rules against hearsay because they are business records—that is, in the words of FRE 803(6), records of a regularly conducted activity. Plaintiffs request the opportunity to secure a certified copy of the documents under FRE 902(11).

**2.**     __FRE 901 Authentication.__ If Plaintiffs are allowed to obtain a certified copy of the documents in Exhibit 13, the certification would address Defendant's objection under FRE 901 for lack of authentication.

**3.**     __FRCP 26 Duty to Disclose.__ Contrary to Defendant's objection under Federal Rule of Civil Procedure 26, Plaintiffs adequately disclosed that they would be using documents of this nature in their initial disclosures. Rule 26 requires each party to provide to the others "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." FRCP 26 (a)(1)(ii). In Plaintiffs' initial disclosures, they described a category of documents in Plaintiffs' possession "related to the damages that they incurred as a result of the designation of female-only slots in the FY2018 BRP process." The documents in Plaintiffs' Exhibit 13 fall into this category. Plaintiffs thus fulfilled the requirements of Rule 26.

**D.     The Search Data from After the Female-Only Slots Were Implemented in Plaintiffs' Exhibits 16-19, 22-25, and 28-31 Are Relevant and Admissible.**

The next group of exhibits to which Defendant objects contains search data from the Port of Tampa from FY2018, FY2019, FY2020, and FY2021—after the female-only slots were implemented. Plaintiffs' Exhibits 16 through 19 contain data on searches of female travelers from CBP's incident log system (IOIL). Plaintiffs' Exhibits 22 through 25 contain data on searches of female travelers from CBP's

Search, Arrest, and Seizure (SAS) database. And Plaintiffs' Exhibits 28 through 31 contain data on searches of male travelers from the SAS database.

Contrary to Defendant's objections under FRE 401 and 402, the search data from FY2018 and later is relevant to prove a fact of consequence to Defendant's BFOQ defense: that the female-only slots were not reasonably necessary to the Port of Tampa's operations. Defendant implemented female-only slots in FY2018 in part to ensure that more searches of females during night-shift hours were conducted when they were required, and that more of them were performed and witnessed by female CBP Officers, not by males or female non-CBPOs. The data from FY2018 and later, however, show that the female-only slots did not accomplish Defendant's objectives. They therefore could not have been necessary to the Port of Tampa's operations.

Although Defendant could not have taken data from FY2018 and later into account in concluding that female-only assignments were necessary in the FY2018 BRP, the Eleventh Circuit has rejected a BFOQ defense based in part on information that the policy makers could not have known. In *Garrett*, 734 F.2d at 622, the defendants maintained a policy before 1981 that only males could fill correctional officer positions in the county jail. As part of their BFOQ argument, the defendants claimed that until 1981 a statewide regulation precluded the county from assigning women to those positions. *Id.* at 623-24. The court found, first, that the regulation did not prohibit women from serving as correctional officers. *Id.* at 624. But the court also observed that "defendants came forth with no evidence that the use of female

correctional officers in Okaloosa County following the regulation change in 1981 has

in any way hindered the efficient operation of the Okaloosa County Jail." *Id.* The

defendants could not have known before 1981 that they would eventually employ

female correctional officers or that employing female correctional officers would

cause no detriment to the jail's operations. Still, those facts influenced the court's

conclusion that the pre-1981 policy of barring women from correctional officer

positions was not reasonably necessary.

### E. The Interrogatory Responses in Plaintiffs' Exhibits 32–37 Are Not Hearsay.

Plaintiffs' Exhibits 32 through 37 contain Defendant's responses to some of

Plaintiffs' Interrogatories. On Plaintiffs' Exhibit List, Defendant notes that

Defendant "does not object tot his information being read into the record or

presented through witness testimony, but objects to admission of interrogatory

responses as an exhibit under" the hearsay rules, FRE 802-804. Contrary to

Defendant's objection, the interrogatory responses are not hearsay. FRE 801(d)(2)

provides that an opposing party's statement is not hearsay if

> The statement is offered against an opposing party and:
>
> (A) was made by the party in an individual or representative capacity;
>
> (B) is one the party manifested that it adopted or believed to be true;
>
> (C) was made by a person whom the party authorized to make a statement on the subject;
>
> (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or

(E) was made by the party's coconspirator during and in furtherance of the conspiracy. . . .

Here, (A) through (D) apply to the interrogatory responses in Plaintiffs' Exhibits 32 through 37. Thus, the exhibits should not be excluded under the hearsay rules.

## CONCLUSION

For these reasons, Plaintiffs ask the Court to rule in their favor in the parties' disputes over jury instructions and Plaintiffs' Exhibits.

Respectfully submitted,

JULIE M. WILSON
General Counsel

PARAS N. SHAH
Deputy General Counsel
*Lead Counsel

/s/ Jessica Horne
JESSICA HORNE
Assistant Counsel

Counsel for Plaintiffs

JASMINE OWENS
Assistant Counsel

KATHRYN W. BAILEY
Assistant Counsel

NATIONAL TREASURY
EMPLOYEES UNION
800 K Street N.W., Suite 1000
Washington, D.C. 20001
202-572-5500
Paras.shah@nteu.org

## CERTIFICATE OF SERVICE

I certify that on August 23, 2024, I electronically filed the foregoing document using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

/s/ Jessica Horne
Counsel for Plaintiffs