# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| TRACY R. ANDERSON, MAURICIO GUERRERO, SAGELINE LAURENT, REBECCA MORALES, and JEFFREY S. THOMAS, <br><br>    Plaintiffs, <br><br> v. <br><br> ALEJANDRO MAYORKAS, Secretary, United States Department of Homeland Security, in his official capacity, <br><br>    Defendant. | Case No. 8:22-cv-02941-VMC-CPT |

## DEFENDANT'S TRIAL BRIEF

Defendant files its Trial Brief providing its justification for its changes to the pattern jury instructions and pattern verdict form based on recent decisions, including incorporating the change in the law from *Babb v. Wilkie*, 140 S. Ct. 1168 (2020), as well as explaining why Plaintiffs' proposed instructions are not supported by the law. In addition, Defendant addresses why personal search data from years beyond FY2018 as well as ports other than the Port of Tampa could not possibly be relevant to whether female-designated slots were reasonably justified by Defendant's business in the Port of Tampa in FY2018. Defendants plan to raise other objections and arguments during the course of the trial, but believed written background would be helpful for the Court on these specific points.

I.  **The Court should adopt Defendant's Jury Instructions and Verdict Form**

    a.  **Changes in the law from *Babb* cases**

As this Court is well aware, in *Babb v. Wilkie*, 140 S. Ct. 1168, 1172 (2020), the United States Supreme Court rejected the United States' position that liability existed *only* when the protected characteristic was a "but-for cause of an employment decision." In other words, the Supreme Court rejected that there was only liability if the plaintiff would have received the position (or not been suspended or fired, etc.) if not for the plaintiff's protected characteristic. The Supreme Court held that the protected characteristic "need not be a but-for cause of an employment *decision* in order for there to be a violation of §633a(a)." *Id.* (emphasis added). However, the Supreme Court also did not adopt Babb's position in the Eleventh Circuit that a personnel action was unlawful if age was a factor in the challenged decision. *Id*.

The Supreme Court explained that "[u]nder § 633a(a), the type of discrimination forbidden is 'discrimination based on age,' and 'in common talk, the phrase 'based on' indicates a 'but for' causal relationship." *Id*. at 1173. Because the relevant statutory language includes "based on," "§633a(a) requires that age be a but-for cause of the discrimination alleged." *Id*. In other words, contrary to Plaintiffs' reading of *Babb*, the statutory language still requires "but for" causation. As the Court concluded, "[a]s a result, [the protected characteristic] must be a but-for cause of discrimination – that is, of differential treatment – but not necessarily a but-for cause of a personnel action itself." *Id*.

2

The Supreme Court only addressed Babb's ADEA claims, not her claims under Title VII. Subsequently the Eleventh Circuit held that the standard articulated in *Babb v. Wilkie,* also "controls cases arising under Title VII's nearly identical text." *Babb v. Sec'y, Dep't of Veterans Affairs*, 992 F.3d 1193, 1196 (11th Cir. 2021).

### b. Defendant's proposed instructions and verdict form incorporate *Babb* and follow other Middle District of Florida cases

Plaintiffs' jury instructions are contrary to the law after *Babb*. Plaintiffs focus on the *Babb* opinion's use of the words "any part" or "consider," without applying the but-for causation standard. To understand what the Court meant when it said "personnel action be untainted by any consideration of age" and "[i]f age discrimination plays any part in the way a decision is made, then the decision is not made in a way that is untainted by such discrimination," *Babb*, 140 S. Ct. 1171, 1174, one must read the rest of the opinion, which made the point repeatedly: "age must be the but-for cause of *differential treatment*." *Id*. at 1174 (emphasis in original).

The Court should adopt the Defendant's proposed instructions, which are consistent with Judge Jung's jury instruction and verdict form in *McLain v. Shulkin*, No. 8:17-cv-1283-T-02CPT, Dkt. 253 & 254 (attached as Exhibits 1 and 2) and this Court's jury instructions and verdict form in *Babb v. McDonough,* No. 8:14-cv-1732-VMC-TBM, upon remand after the appellate decisions (attached as Exhibits 3 and 4). The Eleventh Circuit affirmed the *McLain* instructions on appeal. *McLain v. Sec'y, Dept. of Veterans Affairs*, No. 22-11667, 2023 WL 5664168 (11th Cir. Sept. 1, 2023); *cert denied* in 144 S. Ct. 1353 (2024). The jury instructions in *Babb* were appealed as well and the Eleventh

3

Circuit has yet to rule. While the jury instructions in both *McLain* and *Babb* were for retaliation for protected activity, not sex discrimination, both correctly incorporate the change in the law from *Babb*. *See Canino v. U.S. E.E.O.C.*, 707 F.2d 468, 472 (11th Cir. 1983) ("'discrimination,' as used in Title VII's federal-sector provision, by its own terms includes retaliation"). These instructions apply the revised standard reflecting different potential recovery for proving that discrimination was a but-for cause of the ultimate decision and for proving that discrimination was a but-for cause of differential treatment in the process of making the decision.

Defendant's proposed instruction is based on the Court's instructions from *McLain* and *Babb*. It incorporates the but-for causation that *Babb* requires, and reflects the two ways that Plaintiffs might prevail– by proving that discrimination was a but-for cause of differential treatment and/or by proving that discrimination was a but-for cause of the ultimate decision. Because the remedies for the two are different under *Babb*, it must be clear how the jury finds on each.

    c. **Adverse Employment Action**

Plaintiffs' instruction also removes the adverse action requirement of employment discrimination. There is no indication that *Babb* or other case law has removed this requirement in public-sector cases. *Babb*, 992 F.3d at 1199 ("Add it all up, and the takeaway is this: '[T]he statute does not require proof that an employment decision would have turned out differently if age had not been taken into account'—*i.e.*, does not require that age discrimination be the but-for cause of *an adverse personnel decision*.") (emphasis added). Eleventh Circuit cases post-*Babb* confirm that the adverse action

4

requirement is still in place. *E.g, Durr v. Sec'y, Dept. of Veterans Affairs*, 843 Fed. Appx. 246 (following the Supreme Court's decision in *Babb v. Wilkie*, —— U.S. ——, 140 S. Ct. 1168, 206 L.Ed.2d 432 (2020), we have recognized that a plaintiff no longer need show that his protected activity or status was the but-for cause of the adverse action to state a claim under § 2000e-16.)  Defendant's instruction includes this adverse action requirement.

An adversity requirement is well established in the law.  In *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415, 165 L. Ed. 2d 345 (2006), the Supreme Court summarized that, "it is important to separate significant from trivial harms. Title VII, we have said, does not set forth "a general civility code for the American workplace." *Citing Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998); *see Faragher*, 524 U.S., at 788, 118 S.Ct. 2275 (judicial standards for sexual harassment must "filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing'"). Plaintiffs' instruction misstates the law in suggesting that any employment decision can be actionable by reading out the adverse action requirement.

C. *Bona fide* **occupational qualification instruction**

While the Eleventh Circuit Pattern includes an instruction on affirmative defenses generally, it does not include a pattern on the *bona fide* occupational qualification in particular.  The statutory language establishes the two-prong test for proving a BFOQ, as confirmed by the Supreme Court:

5

> an employer may discrimination on the basis of … sex … in those certain instances where … sex … is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise.

*In'tl Union, United Auto., Aerospace & Agr. Implement Works of Am., UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 200 (1991) (quoting 42 U.S.C. § 2000e-2(e)). The Court outlined the Eleventh Circuit law on the *bona fide* occupational qualification defense in its Order on the Parties' summary judgment motions in this case:

> [T]he Defendant must satisfy two elements. The Defendant must show that: (1) the sex-based qualification sufficiently 'relate[s] to [the] ability to perform [a] dut[y] of the job,' and (2) the particular duty goes to the essence of the Defendant's business.

Dkt. 59 at 24-25 quoting *Berry v. Great Am. Dream, Inc.*, 88 F. Supp. 3d 1378, 1380 (N.D. Ga. 2015).

Plaintiffs attempt to add a third requirement that Defendant must prove that three female-designated slots were the *least discriminatory* option. This is a far higher standard than "reasonably necessary" and is contrary to the law.

The cases Plaintiffs cite in their jury instructions on the subject of rearranging work duties were considering *whether* women could do the job at all. The courts held that women could not be excluded from entire jobs unless the employers could show that specific job duties requiring males could not be rearranged. Nevertheless, Plaintiffs impose a new requirement that is not supported by the case law they cite – that if an employer rearranges job duties so as to allow women to do the job, it must do so in the least restrictive way possible. Plaintiffs' instruction misstates the law.

In *Hardin v. Stynchcomb*, 691 F.2d 1364 (11th Cir. 1982), the plaintiff was denied

6

an interview for a sheriff's deputy position because she was female. The sheriff raised a *bona fide* occupational qualification defense. He explained his informal policy that new deputies be assigned to the jail for six months. He concluded that because women could not perform sensitive tasks in the men's section of the jail such as strip searches and overseeing showers, they could not be hired. *Id.* at 1367. In rejecting this defense, the court observed that the jail had a number of "noncontact" positions – administration, supervision, supply, maintenance, etc. or even positions outside the jail completely that women could perform. *Id.* at 1368. The court explained, "Stynchcomb's policy of assigning new deputies to work in the county jail where almost all positions are reserved for males all but eliminates the opportunity of women to gain employment with the Sheriff's Department." *Id.* at 1370. The court rejected the sheriff's argument that failing to hire female deputies was reasonably necessary to ensure male inmates' privacy rights. *Id.* at 1372-1373.

Rather, the Court observed that the sheriff could rearrange deputies' job duties so that women could be deputies *and* male inmates' privacy could be protected. "Since the majority of the deputy sheriff positions in the male section of the jail do not require performance of strip searches or observation of inmates' use of shower or toilet facilities, it appears that modification of the system of rotating deputy sheriff assignments will avoid the clash between privacy rights and equal employment opportunities without either substantially affecting the efficient operation of the Sheriff's Department or undermining its essential functions. In other correctional institutions it has been found possible to preserve the privacy of inmates while employing guards or correctional

officers of the opposite sex, and defendants have failed to prove that similar accommodations cannot be made in this case." *Id.* at 1373.

Here, CBP is not arguing that women cannot serve as CBPOs as did the sheriff in *Hardin*. On the contrary, CBP has hired females as CBPOs and had made just the types of accommodations that the Eleventh Circuit has suggested, adopting female-designated slots for the limited purpose of performing personal searches.

The other cases on which Plaintiffs rely have the same problem as *Hardin*. For example, in *Gunther v. Iowa State Men's Reformatory*, 612 F.2d 1079, 1086 (8th Cir. 1980), *cert. denied*, 446 U.S. 966 (1980), women were prohibited from being promoted to Correctional Officer II at the Anamosa reformatory because they could not complete the strip searches of males and surveillance of prison showers and toilets which were required by the position. The Eighth Circuit held that, "In addition to showing that the hiring of women at Anamosa would undermine the essence of the prison administration, Anamosa must also demonstrate it could not reasonably rearrange job responsibilities in a way to minimize the clash between privacy interests of the inmates, and the nondiscrimination principle of Title VII." *Id.*

Here, the Defendant *has* hired women to be CBPOs and *has* rearranged duties to minimize the clash between privacy interests and the nondiscrimination principle of Title VII. It designated slots for females only to provide coverage for passenger processing, the CBPO job function that includes personal searches. The cases cited by Plaintiffs stand for the proposition that, rather than failing to hire women for jobs because they involve privacy interests, employers should rearrange duties of those jobs so as to allow

women to perform the jobs.  None stands for the idea that if duties *are* rearranged to minimize any clash, the rearrangement must be done in the objectively best possible way as Plaintiffs' instruction suggests.  Plaintiffs' proposed instruction would limit the jury to finding that Defendant satisfied its BFOQ burden only if Defendant implemented the best policy possible, not one reasonably necessary to the essence of its business which is the standard under the law.

While not directly on point, Plaintiffs' instruction is also problematic because it invites the jury to become a super-personnel department and determine whether the female-only slots were the best potential solution.  *See, e.g., Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) *quoting Elrod v. Sears, Roebuck & Co.,* 939 F.2d 1466, 1470 (11th Cir. 1991) ("[f]ederal courts 'do not sit as a super-personnel department that reexamines an entity's business decisions."); *Combs v. Plantation Patterns,* 106 F.3d 1519, 1543 (11th Cir. 1997) (the court does not "second-guess the business judgment of employers.")   Plaintiffs' instruction asks more than whether the female-only slots were reasonably necessary to CBP's business but also whether Defendant's have proven that no other scheduling arrangement could have met its needs and been less discriminatory.  This is contrary to the law.

II. **The Court should exclude personal search data from FY2019 and later because it is not relevant.**

Plaintiffs cite *Garrett v. Okaloosa Cnty.,* 734 F.2d 621, 624 (11th Cir. 1984) for the conclusion that BFOQs should be evaluated on their success or failure years later, not on whether they were reasonably necessary at the time they were implemented.  But this

9

is not what *Garrett* says. Rather, the cited section of *Garrett* addresses the qualification prong, not the reasonably necessary prong. In *Garrett*, Okaloosa County was arguing that females were not qualified to serve as correctional officers while a certain state regulation was in place, but then became qualified to serve as correctional officers after the regulation changed. The Eleventh Circuit observed that, "[f]or an occupational qualification to be "*bona fide*," it must be just as valid and necessary one day as it is the next." *Id.* "Yet, defendants argue, in effect, that the *same women* who apparently are working out well as correctional officers today would not have worked out prior to 1981, *with the same qualifications*."

CBP has not changed its position on whether women can serve as CBPOs in relation to its BFOQ as did Okaloosa County in *Garrett*. Rather, CBP has been consistent in concluding that only women can conduct personal searches on women. This has been supported by statute for decades. 19 U.S.C. § 1582. Defendant does not expect that Plaintiffs will contest this point, but will dispute which women should be performing those personal searches.

As a practical matter, personal search data from FY2019 and beyond cannot possibly be relevant to whether it was reasonably necessary to implement female-designated slots in FY2018, because the FY2019-and-beyond personal searches had not happened yet. *See* Fed. R. Evid. 401; 402. Admitting these later years of search data into evidence would only serve to confuse the issues, mislead the jury, and lengthen the trial. *See* Fed. R. Evid. 403.

**III.     The Court should exclude evidence and testimony from other ports for the same reason.**

Plaintiff intends to call CBP Port Director Alyssa Morris from the Port of Fresno to testify about how searches were handled there in FY2018. Port Director Morris did not work in Tampa in FY2018 nor is there any evidence in the record to suggest that the Port of Tampa was influenced by or aware of anything that happened in Fresno. What happened or did not happen in other port is irrelevant to whether female-designated slots were reasonably necessary for CBP's business in the Port of Tampa in 2018. Evidence and testimony regarding ports beyond the Port of Tampa should be excluded under Federal Rules 401-403.

Respectfully submitted,

**ROGER B. HANDBERG**
United States Attorney

By:    /s/ *Mamie V. Wise*
MAMIE V. WISE
Assistant United States Attorney
Florida Bar No. 65570
CHRISTOPHER J. EMDEN
Assistant United States Attorney
USA No. 158
400 North Tampa Street, Suite 3200
Tampa, Florida 33602
Telephone: 813-274-6000
Facsimile: 813-274-6200
E-mail: Mamie.Wise@usdoj.gov
Christopher.Emden@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 18, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

                                            /s/ *Mamie V. Wise*
                                            MAMIE V. WISE
                                            Assistant United States Attorney