# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA TAMPA DIVISION

TRACY R. ANDERSON, )
MAURICIO GUERRERO, )
SAGELINE LAURENT, )
REBECCA MORALES, and )
JEFFREY S. THOMAS, )
  )
    Plaintiffs, )
  )
v. )  Case No: 8:22-cv-2941-VMC-CPT
  )
ALEJANDRO MAYORKAS, )
Secretary, U.S. Dep't of Homeland )
Security, in his official capacity, )
  )
    Defendant. )
  )

## PLAINTIFFS' MOTION FOR JUDGMENT AS A MATTER OF LAW

Plaintiffs Tracy R. Anderson, Mauricio Guerrero, Sageline Laurent, Rebecca Morales, and Jeffrey S. Thomas move for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a). Because Plaintiffs have presented evidence of an explicitly sex-based policy affecting their work schedules and assignments, the Court should begin by entering judgment as a matter of law against the Defendant on Plaintiffs' prima facie case of sex discrimination.

As to the BFOQ affirmative defense, Defendant has the burden of proving that alternatives to its facially discriminatory policy "are not viable." *Ambat v. City & Cty. of San Francisco*, 757 F.3d 1017, 1025 (9th Cir. 2014). It is "impossible" for Defendant to prove the BFOQ affirmative defense without that showing. *Id.* Based on the

evidence presented at trial, no reasonable jury could find that Defendant has proven there were no viable alternatives. Rather, the evidence shows that Defendant failed to investigate multiple viable alternatives before implementing its facially discriminatory policy. Defendant's evidence is thus legally insufficient to support a jury finding in Defendant's favor on its affirmative defense.

## MEMORANDUM OF LAW

**I.     The Court may enter judgment as a matter of law when the evidence presented provides no legally sufficient basis for a reasonable jury to find in favor of the non-moving party on an issue.**

"Under Rule 50, a court should render judgment as a matter of law when there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue. Fed. R. Civ. P. 50. We should review all of the evidence in the record and must draw all reasonable inferences in favor of the nonmoving party." *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1192-93 (11th Cir. 2004).

**II.    No reasonable jury could find in Defendant's favor on Plaintiffs' prima facie case of disparate treatment.**

"There is no dispute that the CBP's decision in Fiscal Year 2018 to designate three female-only slots at Tampa International Airport was facially discriminatory." Order, Doc. #81, at 23. Defendant conceded as much at the summary judgment stage, agreeing that "designating female-only slots is facially discriminatory." Def.'s Mot. for Summ. J., Doc. #74, at 2. No reasonable jury could find that Plaintiffs have not proven that: (1) Defendant made personnel actions affecting Plaintiffs; (2)

Defendant treated employees differently because of their gender; and (3) Defendant's gender distinctions played a role in the personnel actions affecting Plaintiffs.

First, a "personnel action" includes "any . . . significant change in duties, responsibilities, or working conditions." 5 U.S.C. § 2302(a)(2)(A). This "broad" definition encompasses "most employment-related decisions," including a "work assignment." *Babb v. Wilkie*, 589 U.S. 399, 405 (2020). The evidence establishes that Defendant's placement of Plaintiffs and their colleagues into the available slots during the BRP process affected the hours they worked, their job duties, and the days of the week that they worked in FY2018.[1] No reasonable jury could find that Defendant's placement of the Plaintiffs into the work units and schedules they received for FY18 was not a personnel action.

No reasonable jury could find that Plaintiffs did not prove the second and third elements of their disparate treatment claim. Defendant treated employees differently because of gender when it conducted the FY18 BRP process with three female-only slots. The gender restriction on those slots meant that only women were placed in the designated slots even if seniority and preferences would have dictated a different outcome. The second element is therefore satisfied. The same is true of the

---

[1] The trial testimony and exhibits establish that there are various units and shifts available as part of the BRP process. The units involve different job duties such as passenger processing, cargo inspection, and reviewing immigration files. The shifts available on the bid sheet designate various regular work hours that might start early in the morning and end mid-afternoon, or begin mid-afternoon and end at 11:00 pm, for example. The BRP process also affected whether employees have a fixed or rotating day off, and whether they were considered "flex" or "nonflex," which determined whether they could fill in across other units as needed.

third element: Plaintiffs' evidence demonstrates that Defendant's explicit gender distinctions "played a role" in the BRP work assignments, which are personnel actions as explained above.

Because no reasonable jury could find in Defendant's favor on Plaintiffs' prima facie case of sex discrimination, the Court should enter judgment as a matter of law against Defendant on this issue.

### III. No reasonable jury could conclude that Defendant has satisfied the strict requirements to prove the BFOQ affirmative defense.

As this Court has recognized, "the BFOQ defense does not excuse investigation of and reliance upon alternatives that involve minor additional costs or inconveniences." Order, Doc. #81, at 27 (quoting *Henry v. Milwaukee Cty.*, 539 F.3d 573, 582 (7th Cir. 2008)) (internal quotation marks omitted).

Here, the evidence at trial establishes that then-Customs and Border Protection (CBP) Assistant Area Port Director Robert Diaz unilaterally created a facially discriminatory staffing policy affecting female CBP Officers (CBPOs) in the Area Port of Tampa without considering either of the "more persuasive" alternatives that the Court has described. *See* Order, Doc. #81, at 30.

**A.** The first reasonable alternative that AAPD Diaz failed to consider was "occasionally seeking assistance from female non-CBPOs, as the Personal Search Handbook instructs" if two female CBPOs were not available for the personal search of a female traveler. *Id.* at 30–31 (internal quotation marks omitted). "Basically, Plaintiffs believe that the occasional use of a non-CBPO law enforcement agent to

4

conduct or witness a search of a female passenger—as allowed by CBP's own handbook—was more reasonable than designating female-only slots on the night shift" at Tampa International Airport. *Id.* at 31.

The data admitted into evidence at trial show that personal searches of female travelers are rare. According to defense witness AAPD Diaz, the data show that personal searches of females generally occurred less than once a month in the two fiscal years leading up to FY2018. Defendant failed to show why using the alternate personnel that CBP's Personal Search Handbook authorizes to participate in personal searches of female travelers if two female CBPOs are unavailable for the search is not a viable alternative to its facially discriminatory policy. AAPD Diaz testified that alternate personnel were still used at Tampa International Airport in FY2018 for personal searches of *each* sex, even after the creation of the female-only night shift assignments. Defendant did not show why using that alternate personnel is acceptable for day shift personal searches of male passengers, but not for the rare night shift personal searches of female passengers.

Each of the Plaintiffs and Fresno Port Director Alyssa Morris testified that, when using the alternate personnel that CBP's Personal Handbook sanctions, those individuals have consistently provided assistance in a timely fashion. These witnesses also testified that, without exception, they experienced no issues with the performance of those alternate personnel in personal searches of female travelers. These same witnesses testified that, as CBPOs performing personal searches with alternate personnel, they never feared that their safety was at risk because they were

5

participating in a personal search with a non-CBPO. Director Morris's testimony, in particular, shows that other CBP ports with very few female CBPOs accomplish the CBP's mission without resorting to sex-based scheduling policies—and that they use the very same alternative that Plaintiffs propose to do it. *See Hardin v. Stynchcomb*, 691 F.2d 1364, 1373 (11th Cir. 1982) (citing evidence concerning other prisons' use of reasonable alternatives and concluding that "defendants failed to prove that similar accommodations cannot be made in this case").

Ultimately, Defendant failed to present any evidence explain why—if using the alternate personnel that CBP's Personal Search Handbook authorizes to assist in personal searches of female travelers if two female CBPOs are unavailable is *not* a viable alternative—CBP's Handbook permits the practice *and* CBP's ports continue to use it regularly in the rare instances that personal searches of female travelers occur. As defense witness Kenneth Wetzel testified, when CBP revised its Personal Search Handbook in 2021, CBP retained the authorization of alternate personnel to participate in personal searches if needed.

B.  The second reasonable alternative that AAPD Diaz failed to consider was paying "overtime to female CBPOs who it would call in to perform or witness patdowns of female travelers between 2:00 PM and 11:00 PM on the rare occasions that such a need arose." Order, Doc. #81, at 30–31.

At the summary judgment stage, this Court noted that "Defendant has not cited any record evidence to support [its] contention" that this alternative is "unworkable due to the time delay in calling female CBPOs in" to Tampa

6

International Airport. *See id.* at 32. At trial, Defendant's witness AAPD Diaz conceded that holding a traveler for up to an hour for a personal search would not be an issue. And Plaintiffs Morales and Laurent said that they could have reported to the airport for a personal search in FY2018 in thirty minutes. Thus, Defendant's time delay contention remains without evidentiary support.

Defendant likewise failed to show that the cost of using this option would be unworkable. Instead, the evidence shows that this alternative would have cost, in fiscal year 2018, hundreds of dollars as compared to CBP's overall overtime budget of millions of dollars. The amount of money CBP would have to expend to use a callback overtime policy for rare personal searches constitutes, at most, a "minor cost or inconvenience." *See* Order, Doc. #81, at 27.

Because Defendant has not presented any evidence that AAPD Diaz considered these reasonable alternatives before instituting a sex-based scheduling policy—and, indeed, admitted at trial that it did not—its BFOQ affirmative defense must fail as a matter of law. The jury does not have sufficient evidence to conclude that Defendant's designation of three female-only night shift slots was reasonably necessary to its business operations; that Defendant had any factual basis to believe that male CBPOs of could not safely and efficiently perform the duties of the designated female-only shifts; and that Defendant had no way to rearrange work assignments to avoid a clash between travelers' privacy interests and its employees' Title VII rights.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their motion for judgment as a matter of law.

Respectfully submitted,

| | |
|---|---|
| JULIE M. WILSON<br>General Counsel | JASMINE OWENS<br>Assistant Counsel |
| PARAS N. SHAH<br>Deputy General Counsel<br>*Lead Counsel | /s/ Kathryn W. Bailey<br>KATHRYN W. BAILEY<br>Assistant Counsel |
| JESSICA HORNE<br>Assistant Counsel | NATIONAL TREASURY EMPLOYEES UNION<br>800 K Street N.W., Suite 1000<br>Washington, D.C. 20001<br>202-572-5500<br>paras.shah@nteu.org |
| November 21, 2024 | Counsel for Plaintiffs |

## **CERTIFICATE OF SERVICE**

I certify that on November 21, 2024, I electronically filed the foregoing document using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

/s/ Kathryn W. Bailey  
Counsel for Plaintiffs